UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-CV-11009-RWZ

DUSAN PITTNER

v.

CASTLE PEAK 2012-1 LOAN TRUST and
SELENE FINANCE LP

MEMORANDUM & ORDER

April 14, 2021

ZOBEL, S.D.J.

Plaintiff, Dusan Pittner, complains that defendants, Castle Peak 2012-1 Loan Trust ("Castle Peak") and Selene Finance LP ("Selene"), have breached their contract with him and violated Chapter 93A of the Massachusetts General Laws and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). The contract at issue is a bankruptcy reorganization plan that redefined plaintiff's obligations to defendants under the terms of an existing mortgage between Castle Peak and plaintiff, with Selene as the mortgage servicer. Defendants now move for summary judgment and to strike plaintiff's cross-motion for summary judgment. (Docket ## 85, 88).

1

## Motion to Strike

Because plaintiff filed his cross-motion (Docket # 87) nearly one month after the court's deadline (Docket # 82), defendants' motion to strike it is allowed.[1]

## Summary Judgment

I. Facts[2]

In 2007, Ludmilla Pittnerova, plaintiff's wife at the time, executed a promissory note (the "Note").[3] As security, she and plaintiff granted a mortgage on certain real property in Boca Raton, Florida (the "Property"). The mortgage, which is now held by Castle Peak and serviced by Selene, provides that monthly payments covering principal, interest, taxes, and insurance on the Property are payable to Selene. Selene then assumes responsibility for paying taxes and premiums to the city and insurance provider.

In 2012, plaintiff filed for Chapter 11 bankruptcy in the District of Massachusetts. 11 U.S.C. §§ 1101-1195. Defendants filed a proof of claim in that proceeding for the amount due on the mortgage and Note, including arrears. In March 2013, plaintiff filed a second amended plan of reorganization (the "SAPlan"), which outlined his obligations to defendants regarding the Property. Defendants responded with a notice of no objection to approval of the disclosure statement that outlined the SAPlan.[4] The

---

[1] This ruling does not affect plaintiff's arguments in opposition to defendants' motion for summary judgment, although they were contained in the same filing as his cross-motion.

[2] The undisputed facts are derived from defendants' statement of material facts, plaintiff's response thereto, and all documents filed therewith. (Docket ## 86, 87).

[3] They divorced in 2014.

[4] Defendants did not file objections to the SAPlan itself, though they objected to confirmation of the SAPlan. The bankruptcy court confirmed the SAPlan after defendants failed to appear at the confirmation hearing, and defendants later withdrew their objection.

2

bankruptcy court confirmed the SAPlan in July 2013. That same month, plaintiff filed, and the bankruptcy court approved, an assented-to motion to modify the SAPlan by increasing the interest rate due to defendants on the mortgage.

In May and September 2014, Selene sent Ms. Pittnerova notices of default. In response, plaintiff—not his wife—submitted a qualified written request ("QWR") for information about the mortgage and Note, as provided under RESPA. In September 2014, Selene sent him a letter that contained "a detailed accounting of the monies received and applied to the loan, as well as an accounting of the related escrow account." (Docket # 86-1 at 237). In May 2015, however, Selene sent another letter to Ms. Pittnerova, which indicated that they were sending her their response to plaintiff's requests for additional information because plaintiff was not an "authorized party" on the loan.[5] Having failed to obtain information directly from Selene, in 2015 plaintiff filed an adversary proceeding in bankruptcy court that ultimately led to this proceeding. In May 2016, plaintiff filed a post-confirmation plan of reorganization (the "PCPlan"), which clarified the parties' obligations with respect to the mortgage. The bankruptcy court confirmed the PCPlan and made it retroactive to July 2013.

In March and April 2015, Selene returned two payments that plaintiff had made on the loan, with an explanation that the amount paid was "not the agreed upon amount" or was less than required to cure the default on the loan. (Docket # 87-1 at 51--52). Plaintiff's last payment on the mortgage was in November 2015 and was applied to the October 2014 loan statement for the property. Since 2012, plaintiff has not sent payments to Selene to cover the taxes and insurance on the Property. He contends

---

[5] Selene provided instructions for Ms. Pittnerova to add plaintiff as an authorized party, but plaintiff did not obtain permission from her to allow Selene to share information with him until May 2017.

3

that, under the Plan, he was to pay taxes and insurance directly to the city and insurance provider, rather than to Selene. However, he does not claim to have made any such payments. Selene states that it has been paying these expenses, which plaintiff disputes.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the defendant moves for summary judgment, the record may be examined in the light most favorable to plaintiff (who bears the ultimate burden of proof at trial), but plaintiff "must reliably demonstrate . . . specific facts sufficient to create an authentic dispute." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A factual dispute is material if it 'affects the outcome of the litigation,' and genuine if manifested by 'substantial' evidence 'going beyond the allegations of the complaint.'" Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 486 (1st Cir. 1981) (quoting Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975)).

## III. Analysis

### A. The Real Estate Settlement Procedures Act (Count II)

RESPA requires servicers of federally related mortgage loans to respond to QWRs by borrowers on the loan. 12 U.S.C. § 2605(e). "Under RESPA, the term 'borrower' means a borrower on the loan, not merely a borrower named in the

4

mortgage. Therefore, a plaintiff named as a borrower in the mortgage but who did not sign the note lacks standing to pursue a RESPA violation." Dionne v. Fannie Mae, No. 15-cv-00056, 2016 U.S. Dist. LEXIS 161847, at *14 (D.N.H. Nov. 21, 2016); see Saint Vil v. Wells Fargo Home Mortg., No. 17-cv-12121, 2019 U.S. Dist. LEXIS 22715, at *24–25 (D. Mass. Feb. 12, 2019) ("While RESPA does not define the term 'borrower,' '[a] number of federal courts have held that only individuals who execute the promissory note are "borrowers" with standing to bring a RESPA claim.'" (quoting Nelson v. Nationstar Mortg. LLC, No. 16-cv-00307, 2017 U.S. Dist. LEXIS 45276, at *8 (E.D.N.C. Mar. 28, 2017))). Because plaintiff did not sign the Note, summary judgment as to this count is allowed.[6]

### B.   Breach of Contract (Count I)

"Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F. 3d 17, 21 (1st Cir. 2013). "A plan of reorganization is a binding contract between the debtor and the creditors and is subject to the general rules of contract construction and interpretation." Barraford v. T&N Ltd., 778 F.3d 258, 263 (1st Cir. 2015) (quoting In re New Seabury Co., 450 F.3d 24, 33 (1st Cir. 2006)). "The interpretation of a contract is a question of law for the court." Children's Hosp. Corp. v. George Wash. Univ., 750 F. Supp. 2d 239,

---

[6] Plaintiff contends that in its Order on defendants' motion to dismiss, (Docket # 26), the court stated that he had standing to bring his RESPA claim. To the contrary, the court referenced standing in the context of his claims regarding the reorganization plans, not his RESPA claim.

5

245 (D. Mass. 2010) (citing Allstate Ins. Co. v. Bearce, 589 N.E.2d 1235, 1238 (Mass. 1992)).

Plaintiff alleges that defendants breached the reorganization plans by refusing to communicate with him about the mortgage and by returning certain payments he made on the mortgage. As discussed above, defendants were not obligated to communicate with plaintiff under RESPA, and in any case provided Ms. Pittnerova with instructions to allow plaintiff to receive information about the mortgage. The parties do not dispute that the mortgage requires plaintiff to make monthly tax and insurance payments to Selene, which then pays the city and insurance provider. The SAPlan and PCPlan similarly indicate that plaintiff was required to make monthly tax and insurance payments. Plaintiff does not contend that he made any such payments—either directly to the city and insurance provider, or indirectly to Selene—after agreeing to the SAPlan and PCPlan. Selene's rejection of two of plaintiff's payments was understandable because the payments were for less than the amount due and were therefore inconsistent with the terms of the parties' contract.

As a matter of law, the evidence does not support plaintiff's allegations of breach of contract, thus summary judgment as to count I is allowed.

### C.   Massachusetts General Laws ch. 93A (Count III)

"[U]nfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful in Massachusetts. Mass. Gen. Laws ch. 93A § 2. "The simple fact that a

party knowingly breached a contract does not raise the breach to the level of a Chapter 93A violation, however." Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996).

> To constitute an unfair or deceptive act, the objectionable conduct must be "in disregard of known contractual arrangements and intended to secure benefits for the breaching party," or otherwise use[d] . . . "as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract [must have] an extortionate quality that gives it the rancid flavor of unfairness."

Clinical Tech., Inc. v. Covidien Sales, LLC, 192 F. Supp. 3d 223, 242 (D. Mass. 2016) (emphasis added) (last alteration in original) (quoting Ahern, 85 F.3d at 789–99).

As discussed supra, plaintiff lacks standing to support his allegation that Selene's failure to respond to his QWRs violated Chapter 93A. His remaining allegation, that Selene's initial acceptance of and later refusal to accept payments was unfair or deceptive, is simply an allegation that Selene breached the reorganization plans, which the court has already determined defendants did not do. Accordingly, summary judgment as to this count is allowed.

## IV. Conclusion

Defendants' motion for summary judgment (Docket # 85) and motion to strike (Docket # 88) are ALLOWED.

Judgment may be entered for the defendants.

April 14, 2021
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

7